The City of Atlanta v. Gabbett.

1. The statute under which a local assessment was made upon adjacent property on account of the construction of a sewer, requiring that the notice to be published prior to the final passage of the ordinance should contain a statement of the size of the contemplated sewer, a notice that the sewer would be "of various

diameters," with nothing else to indicate its size, was no compliance with the statute, and the ordinance thereafter passed was illegal and void. All that was done under it was without authority of law, and no assessment upon adjacent property on account of the construction of the sewer is collectible.

2. The ordinance can derive no aid from a proper notice published prior to its introduction, the statute requiring that the notice should be published not before but after the ordinance was introduced.

3. Where the scheme of the statute providing for the construction of sewers is to make or authorize local assessments upon adjacent property in consideration of benefit to the property in the matter of sewer connection, a mere strip of land lying between the sewer and the next proprietor's tract, too narrow for any use in which local sewerage would be needed or available, is not assessable, the statute not contemplating the assessment of any property other than that which could possibly be benefited in the manner indicated. That this intervening strip would, since the construction of the sewer, be desirable property for the adjoining proprietor to own, and would, as his property, be much enhanced in value by reason of the construction of the sewer, is irrelevant.

November 6, 1893.    *Judgment affirmed.*

Petition for injunction. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1893.

By act of November 8, 1889, the charter of the city of Atlanta was amended so as to provide, " that in all cases where a sewer shall be laid by or under the authority of said city in any street, the sum of ninety cents per lineal foot shall be assessed upon the property and estates respectively abutting on said sewer, on each side of said street in which said sewer is laid or constructed, and in consideration of the payment of said assessment the owners of said estates shall have the right to connect their drains from said abutting property for the discharge of sewerage into said sewer; and in case any such sewer is laid or constructed through or over any private property, along the course of any natural drain or otherwise, a like sum of ninety cents shall be assessed upon such property abutting on each side of said sewer for every lineal foot, making in all one dollar and eighty

cents for every lineal foot, to be assessed upon such property through which sewers are constructed as aforesaid; and in consideration of the payment of said assessment, the owners of said estates respectively on each side of said sewer, through or over which such sewer may be constructed, shall have the right to connect their drains from said abutting property for the discharge of sewerage into said sewer. The extent and character, material used, and expense of sewers constructed, as well as the time and manner of constructing the same, shall be in the discretion of the mayor and general council of said city, and to be prescribed from time to time by ordinances, and upon like notice, and in the same manner, and the assessment laid and enforced by execution, levy, sale and otherwise, as in cases of ordinances and assessments for the paving of streets in said city, except that sewers hereby authorized may be constructed with or without petition by property-owners, where, in the judgment and discretion of the mayor and general council, the public health and good of the city shall require," etc. By section 6 it is enacted, "that the construction of all sewers under this act shall be provided for by ordinance; after the first reading of an ordinance for the construction of a sewer, a notice of the introduction of the same shall be published in one or more of the daily papers of the city; such notice shall contain a statement of the line along which the proposed sewer is to be laid, and a statement of the general character, material and size of such sewer. Said notice shall be published at least as many as ten days before the adoption of said ordinance, and said ordinance may be adopted at the next meeting after its introduction, or at any subsequent meeting, after said notice has been published. Substantial compliance with the above requirement as to notice shall be sufficient." Acts 1889, p. 956.

The city caused to be constructed two large trunk

sewers of brick and stone, which ran through a lot of land belonging to the plaintiff, one of them known as the Butler street branch sewer, the other as the Rice street sewer.   Executions for the amount assessed against her property having been issued and levied, and the property having been advertised for sale thereunder, she brought her petition to enjoin the collection of the executions.   As to the Butler street sewer, it appeared from defendant's answer, that an ordinance for its construction was introduced in council on October 20, 1890, and notice of the same published according to the statute, which notice stated the size of the contemplated sewer as "from seven feet nine inches to nine feet in diameter"; but for want of accessible funds the construction of the sewer could not be provided for under this ordinance; and on January 19, 1891, another ordinance for the construction of said sewer was introduced, and the published notice stated that it was to be "of various diameters," but gave no further information as to its size.   The court held that this defect in the notice (which otherwise complied with the law) rendered the assessment void, and directed a verdict enjoining its enforcement.   Defendant assigned this ruling as error, because the portion of the statute prescribing that notice shall be published after the introduction and before the passage of the ordinance is merely directory, and the notice published before the introduction of the ordinance under which the sewer was constructed, was sufficient ; and because actual notice to plaintiff's agent, as shown by his testimony, dispensed with the necessity for constructive notice by publication; or at least such actual notice aided the published notice so far as to make immaterial and harmless the omission of a specific statement as to the size of the sewer; and the court should have so held, or should have submitted to the jury, as requested by defendant, whether the notice given by

both advertisements, in the light of all the facts and circumstances, amounted to substantial compliance with the statute. (The agent mentioned testified, that he was only agent for paying taxes on the property; that he saw neither of the published notices but knew the sewer was going to be built, and when it was being built made no objection and took no step to try to stop it. Plaintiff was a non-resident. It was admitted by her counsel, that the sewer was of suitable size and character for the proper drainage of the property and the section of the city it was constructed to drain; that it cost more than $10 per lineal foot to build; and that it had enhanced the market value of plaintiff's property more than the amount of the assessment against her.)

In the petition it is alleged, that the assessments are inequitable, unjust and out of all proportion to the benefits to the property from the sewers; that these sewers drain a large portion of the territory of the city, but are not such as can be used by plaintiff for draining off the water that falls on her property, or for the connection of private sewers from said property; that the property is vacant, and before it can be used for building purposes, said sewers will have to be covered fifteen or twenty feet deep; and that she can never derive any special benefit from them. She further alleges, that the portion of the Rice street sewer which runs through her property ought not to be chargeable to her entirely, because it simply traverses her property along one border of the same in such a way as that to make her pay for all of it would be making her pay for what goes as much to benefit the property of the adjoining owner (if there is any benefit at all from it) as it does to benefit her; that is, the sewer happens to be a little on her side of the line, but there is as much incidental benefit to the owner on the other side. As to this assessment, the court submitted to the jury to find from the evidence

whether it was reasonable, and if not, to find what pro-
portion of it would be reasonable under the evidence;
taking into consideration the situation of the property
and of the sewer as laid through it, and the benefits that
might be derived by plaintiff from the sewer considered
with relation to the sewer system of the city.    The jury
found that half of this assessment (remaining after the
deduction of certain overcharges admitted by the city)
be enjoined.    The ruling of the court is assigned as
error, in that it disregards the rate and basis of assess-
ments as fixed by the statute, and leaves the jury free
to adopt a different basis.    Further error is assigned,
because the court rejected testimony offered by defend-
ant, tending to show that the strip of land belonging to
plaintiff and lying between the sewer and the land of
the adjoining owner, while too narrow or shallow to be
cut into building lots, had been greatly enhanced in
value by reason of the construction of the sewer, on ac-
count of its lying immediately between the sewer and
the vacant property of the adjoining owner; defendant
offering to prove that this narrow strip was worth more
to the owner of this adjoining vacant property because
of the construction of the sewer.    Also, because the
court overruled defendant's objections to testimony in-
troduced by plaintiff, that only a small part of the area
of her property was susceptible of direct drainage by the
two sewers in question ; and testimony as to the size
and cost of lateral sewers which would be necessary, in
the opinion of a witness, to drain certain parts of the
property.    The objections were, that the rate and method
of the assessments were fixed by the statute, and it was
not competent to have the question of their reasonable-
ness submitted to the jury; and even if this question
could be inquired into, the only competent evidence
would be the facts as to the location and description of
the property, the location and character of the sewers,

the capacity of the property for subdivision and improvements, and the like, leaving the jury to draw their own conclusions as to the feasibility of draining the area of plaintiff's lot by means of these sewers.

J. A. ANDERSON and FULTON COLVILLE, for plaintiff in error. HALL & HAMMOND, *contra*.