HOLLIDAY, executor, *et al. v.* THE CITY OF ATLANTA.

1. Although the charter of a municipal corporation may confer upon it the power to construct sewers upon private property, upon payment of damages to any person whose land is thus appropriated to the public use, and also the further power to charge against such person a certain proportion of the cost of construction, the right to exercise the latter power is dependent upon the lawful exercise of the right of appropriation under the former. Consequently, where under an ordinance which was void because of non-compliance with the provisions of the charter, and which therefore conferred upon the municipal corporation no authority to enter upon the land of an owner and construct a sewer, it nevertheless did so enter, it became and was a mere trespasser, and the owner was entitled to recover from the municipal corporation the value of the land thus illegally appropriated; nor did such recovery impose upon him any liability to the city for the value of the improvements thus placed upon his property without his consent.

2. There being, at the time of the completion of the sewer so constructed, no liability on the part of the landowner to pay to the city any proportion of the expenses of construction, a statute thereafter passed authorizing the municipal corporation, by a new assessment, to impose upon the owner the payment of a portion of such expenses, was such "retroactive" legislation as is prohibited by the constitution of this State; and therefore, for want of power in the General Assembly to pass the same, it was void.
    July 8, 1895.

Petition for injunction. Before Judge LUMPKIN. Fulton county. February 4, 1895.

ARNOLD & ARNOLD, for plaintiff, cited 93 *Ga.* 266; Cooley, Const. Lim. (5 ed.) 456; 4 Conn. 209; 10 Am. Dec. 132; Endlich, Int. Stat. §291; 26 Md. 194; 2 Allen, 361; 19 Ill. 226; 8 Am. Dec. 112; 3 *Id.* 39; 5 *Id.* 291; 8 Am. Rep. 153; 21 *Id.* 677; 18 N. H. 547; 15 Am. & Eng. R. R. Cas. 510; 18 Am. & Eng. Corp. Cas. 230; Potter's Dwarris, Statutes, 165.

J. A. ANDERSON and FULTON COLVILLE, for defendant, cited 87 *Ga.* 79, 294; 3 Am. & Eng. Enc. L. 757–761; 25 *Id.* 562–563; 79 Penn. St. 407; 33 N. J. L. 330; 19 Wis. 17; 6 Conn. 197; 36 Mo. 294; 18 Iowa, 292; 29

Ind. 533; 36 Hun, 24; 5 O. St. 225; 34 N. J. L. 237; Pomeroy, Const. L. (9 ed.) 520 *et seq.*; 39 N. H. 304; 4 Tex. 470; 7 Humph. 130; 25 Am. & Eng. Enc. L. 562–3, and notes; 123 N. Y. 490: 107 N. Y. 329; 36 Penn. St. 29, s. c. 78 Am. Dec. 359; 27 Am. & Eng. Corp. Cas. 141; 99 and 100 N. Y. 603; 125 U. S. Sup. Ct. Rep. 763; 4 L. R. A. 445; 40 Iowa, 78; 62 Iowa, 392; 3 Am. & Eng. Enc. L. 757, note 2; Black, Const. Prohib. 177; 1 Dill. Mun. Corp. (4 ed.) §79, pp. 134–135, note 1; 2 *Id.* §593, and cit.; 40 Am. Dec. 387; 3 N. Y. 511, s. c. 53 Am. Dec. 325.

LUMPKIN, Justice.

In 1891 the City of Atlanta caused to be built a large sewer which ran through the property of Mrs. P. E. Holliday, who died in 1894. The sewer was constructed under authority of the act of 1889 (Acts of 1889, p. 956), but the published notice of the ordinance under which the improvement was made was fatally defective for the reasons set forth in the decision of this court in the case of *City of Atlanta* v. *Gabbett*, 93 *Ga.* 266. Executions for amounts assessed against the Holliday property for the construction of the sewer were issued and levied, and J. S. Holliday, as executor of his deceased wife, filed a petition to enjoin their enforcement. A restraining order was issued, and the case set for a hearing. After the decision in the Gabbett case, the city dismissed the levies on the Holliday property, but the petition for injunction was left pending and undisposed of. In June, 1894, upon an action which had previously been filed, Holliday obtained a verdict and judgment against the city for $300.00, as compensation for the land taken and used by the city in the building of the sewer. The declaration in that case alleged, that "said land was taken by defendant, acting within its legal competency and for public purposes, as part of the sewerage system of the City of Atlanta"; and the verdict

recited that it was "not to prejudice the right of the city to try to subject the property of the plaintiff to assessment on account of the construction of the sewer."

In December, 1893, the General Assembly passed an act amending the charter of the City of Atlanta, in the second section of which it was enacted that in any case where land had been previously taken from any owner for the purpose of constructing a sewer, without first condemning and paying for such land, the mayor and council were authorized to institute condemnation proceedings for the purpose of acquiring title to such land, under the same rules and regulations as were applicable to condemnation proceedings instituted before the actual taking and use of such land. Acts of 1893, p. 175. The act further provided for assessments upon abutting property owners for their proportion of the expenses of constructing sewers in the class of cases provided for in the act, etc. Under this act, the city took steps to assess the Holliday property and render it liable for its alleged proportion of the original cost of constructing the sewer in question; and Holliday thereupon brought an equitable petition to enjoin the city from proceeding to reassess the property as thus proposed. The petition alleged, that if the assessment made under the act of 1889 and the ordinance and advertisement which preceded the construction of the sewer was not valid, it could never become so; and that the act of 1893 was unconstitutional for various reasons, one of which was that it was retroactive in its nature, and therefore void. The injunction prayed for was denied, and the plaintiff excepted.

1. It plainly appears that when the City of Atlanta entered upon the Holliday land and appropriated a portion of it for the construction of the sewer, it had absolutely no lawful right whatever so to do, and was therefore a mere trespasser; and there can be no possible

doubt that the owner was entitled to recover from the
city the value of the land thus illegally appropriated.
This seems to have been conceded by the able and effi-
cient city attorney; but he insisted that the fact that
Holliday did institute his action and recover from the
city the value of the property taken, rendered him liable
for the improvement thus placed upon the land without
the consent of Mrs. Holliday, who owned the premises
at the time the sewer was constructed.

We are not aware of any principle of law or justice
upon which this proposition can be maintained. Neither
an individual nor a corporation can unlawfully and forci-
bly improve any person's property against his wish, and
then charge him with the cost of so doing. It makes
no difference at all that the declaration and verdict in
the action against the city to recover the value of the
land taken contained the expressions quoted in the
foregoing preliminary statement. It would not be fair
to construe the first into a conclusive admission by Hol-
liday that in taking the land the city was proceeding
lawfully; nor does the qualification in the verdict amount
to anything. Holliday's rights should not be prejudiced
by a mere concession upon his part that the city might
*try* to do something which he had the very best reason
for knowing it could never do lawfully.

2. We do not think the act of 1893 is effectual for the
purpose of enabling the city to render Holliday liable
for any proportion of the cost of constructing this sewer.
The mere fact that his testatrix could have been made
liable under the act of 1889, if the city had duly ob-
served the requirements thereof, does not help the mat-
ter. The fact stands that, while professing to follow
this act, the city authorities, because of the failure to
publish the requisite notice, were left without even the
shadow of right to demand or collect a single cent from
Mrs. Holliday. As matters stood when the sewer through

the Holliday property was completed, there was no existing law under which the owner could be made liable for any part of its cost. The act of 1893 declares, in effect, that in the way therein indicated the present owner may be rendered liable for a portion of the same. In other words, it saddles upon him a liability as to a past transaction in regard to which he was free from liability, and which could not lawfully be imposed upon him at the time of the passage of the act. To this extent it is certainly retroactive within the letter and meaning of the constitution. To our minds this proposition is really too plain for argument. The city no longer had an existing right to make an assessment upon the Holliday property, and the owner's right of exemption from such assessment had, by reason of the city's *laches*, become vested. Therefore, the act of 1893 was not one which merely cured a defect in remedy or affirmed an existing right of the city, but was one which injuriously affected a vested right of the citizen. It could not, therefore, be constitutionally passed.

We rest the soundness of the ruling made upon the mere statement of it in connection with the facts, and shall not take the time to cite authorities in support of it. If we deemed it necessary to do this, there would be no difficulty in producing them by the score, and from the most eminent and respectable sources.

*Judgment reversed.*