CHICAGO AND NORTH WESTERN RAILWAY COMPANY,
Appellant
v.
CITY OF REDFIELD, Respondent

(160 N.W.2d 640)

(File No. 10500. Opinion filed August 15, 1968)

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for plaintiff and appellant.

**Galen G. Gillette, Lawrence E. Kayl,** Redfield, for defendant and respondent.

HANSON, Presiding Judge.

The Chicago and Northwestern Railway Company is the owner of property included in one of the City of Redfield's proposed street improvement projects. This action to enjoin and restrain the proposed special assessment of abutting property was dismissed by the trial court and plaintiff appeals.

Pursuant to SDC 1960 Supp. 45.1701[1] the common council of the City of Redfield declared the necessity of improving certain streets with curb, gutter, and bituminous paving described

---

1. "Whenever the governing body shall deem it necessary to open, widen, extend, grade, gravel, surface with oil or other bituminous material, pave, repave, bridge, construct a viaduct upon or over, erect equipment for street lighting in, curb, gutter, drain, or otherwise improve any streets, alleys or public ways for which a special assessment is to be levied, it shall declare in a proposed resolution the necessity of such improvement, stating therein the streets, alleys, public ways, or grounds to be improved, the general nature of the proposed improvement, the material to be used or materials from which a choice may be made, an estimate of the total cost or cost per linear foot, a description of the classes of lots to be assessed, and the method of apportioning the benefits thereto as provided in section 45.1702. If it is deemed expedient for the municipality to assume and pay any portion of the cost of the improvement, the resolution may so provide, or the portion so to be assumed may be provided by a subsequent resolution, subject to the right of referendum on such resolution.

    "Such resolution shall be published once in the official newspaper of the municipality, with an appended notice stating the place and time, at least two weeks after such publication, at which the governing body will meet for the consideration of the adoption of the resolution. Said notice shall state further that at said time and place the governing body will consider any objections to the proposed resolution by owners of property liable to be assessed for the improvement. If such improvement be petitioned for by the owners of more than fifty-five per cent of the frontage of the property to be assessed therefor, it may be provided for by resolution without publication. "'* * *

    "At the time of such meeting or at any adjournment thereof the governing body shall consider any objections to such proposed resolution and may adopt such resolution, with or without amendment as it may deem proper; but no amendment shall be made affecting property of any class not included in the original resolution until the owner thereof shall have been given the notice and opportunity to be heard hereinbefore provided.

    "After twenty days from the adoption and publication of such resolution, unless the referendum be invoked or unless a written protest shall have been filed with the auditor or clerk signed by the owners of more than fifty-five per cent of the frontage of property liable to assessment, the governing body shall have power to cause such improvement to be made, to contract therefor, and to levy and collect special assessments therefor as provided in this title, provided, that any such proceedings taken prior to the adoption of such resolution shall be deemed ratified thereby. No contract made or assessment levied for any such improvement shall be void by reason of any defect or irregularity in said resolution or notice or in the publication thereof, and the determination of the governing body as to the sufficiency or insufficiency of protests thereto shall be conclusive unless such determination is unreasonably and arbitrarily or fraudulently made."

as Street Improvement 1A which included abutting property owned by the railway company. The proposed Resolution of Necessity and an appended Notice to Property Owners was published in the Redfield Press on March 24, 1966. In accordance with the Notice the City Council held a hearing on April 11, 1966 to consider the adoption of the Resolution and to hear and consider objections by property owners liable to be assessed for the improvement.

Plaintiff did not appear at the hearing and did not file written objections or make any protest to the proposed improvement. The minutes of the City Council meeting showing adoption of the Resolution of Necessity were published in the Redfield Press on April 14, 1966.

This action was not commenced until April 1, 1967. On appeal plaintiff principally contends: (1) the Resolution of Necessity is invalid and ineffective, (2) there is no benefit to its property, and (3) plaintiff's property is being taken without due process of law contrary to Article VI, §§ 2, 13 and 17 of the South Dakota Constitution and the Fourteenth Amendment to the United States Constitution.

■ It is well settled that a Resolution of Necessity is jurisdictional and statutes authorizing the special assessment of private property for improvements must be strictly complied with. Mason v. City of Sioux Falls, 2 S.D. 640, 51 N.W. 770; Whittaker v. City of Deadwood, 23 S.D. 538, 122 N.W. 590; Haggart v. Alton, 29 S.D. 509, 137 N.W. 372; Pettigrew v. City of Sioux Falls, 35 S.D. 78, 150 N.W. 772; Mansfield v. Rapid City, 48 S.D. 155, 203 N.W. 201. However, in this case plaintiff points out no defect or irregularity in the proposed Resolution of Necessity or its appended Notice of Hearing. It fully and fairly complied with the mandatory requirements of SDC 1960 Supp. 45.1701.

■ Plaintiff did not appear at the hearing on the resolution and filed no objections. After its adoption referendum was not invoked and no written protest by owners of fronting property was filed. Consequently, the City Council of Redfield acquired jurisdiction to proceed with the proposed improvement, Chicago

& N.W. Ry. Co. v. City of Hot Springs, 52 S.D. 484, 218 N.W. 876, unless subsequent proceedings rendered the contract for the improvement void for some reason such as a material change in the project. Mansfield v. Rapid City, 48 S.D. 155, 203 N.W. 201.

■ In the published minutes of the meeting of the City Council showing adoption of the Resolution of Necessity for Street Improvement 1A the first paragraph of the resolution appears garbled because of an interlineation and transposition of type. However, the entire resolution is shown and this inadvertent mistake in typesetting constituted harmless error and did not vitiate the publication or invalidate the proceedings. See Eckhart v. C. H. Atkinson Paving Company, 46 S.D. 147, 191 N.W. 441, involving an alleged defective published notice, and Vincent v. City of Pacific Grove, 102 Cal. 405, 36 P. 773.

■ In general, railroad property is subject to special assessments for local improvements. Vol. 14, McQuillin Municipal Corporations, § 38.41. This was the conclusion reached in Chicago & N.W. Ry. Co. v. City of Hot Springs, 52 S.D. 484, 218 N.W. 876, if such property is specially benefited by the local improvement. The question of special benefit is therefore a matter of local concern in each case dependent upon the kind of public improvement proposed and the nature of the railroad property involved. In this respect plaintiff contends its railroad property will not be specially benefited by the proposed street improvement project in the City of Redfield and as the estimated cost amounts to 70 per cent of the value of its property it is unreasonable, confiscatory and deprives the railway of property without due process of law. The merits of these contentions cannot be considered until after the cost of the project has been determined, the assessment roll prepared, and plaintiff's assessed share determined in accordance with the procedure provided for in SDC 45.21. An opportunity to appear, object, and present the issue of special benefits is specifically provided for therein. After the assessment roll is prepared the governing body of the city, according to SDC 45.2104 as amended by Chapter 283, Laws of 1963, must hold a public hearing to consider the assessment roll and any objections thereto. Upon

this hearing the governing body is given the authority to approve, equalize, amend, or reject the same.

SDC 1960 Supp. 45.2118 provides in part that "No injunction restraining the making of any local improvement under the provisions of this chapter shall be issued after the letting of the contract therefor." This is evidently intended to prevent an individual property owner from stopping or delaying the completion of a public improvement project after the contract therefor has been let pending determination of the legality of a special assessment on a particular piece of property. It does not prohibit a property owner from obtaining injunctive relief against an alleged illegal, unlawful or void special assessment against his property. This is contemplated in the succeeding sentence in SDC 1960 Supp. 45.2118 which provides that "No action or proceedings shall be commenced or maintained in any court attacking the validity of the proceedings for special assessments up to and including the approval of the assessment roll or questioning the amount of such assessment unless such action is commenced within thirty days after the publication of the resolution approving the assessment roll and notice that assessments are due and payable as provided in section 45.2105."

Affirmed.

All the Judges concur.